**In re David HENRY, Relator.**

**David Henry, Appellant,**

v.

**James McMichael and Elizabeth Ann Koehler, Co–Independent Executors of the Estate of W.T. McMichael, and Catherine McMichael, Appellees.**

**Nos. 01–07–00601–CV, 01–07–00622–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Oct. 2, 2008.

Rehearing Overruled Dec. 3, 2008.

John W. Havins, Havins & Associates, P.C., Houston, Scott A. Whisler, Scott A. Whisler, P.C., Dallas, for Relator.

Lynn J. Klement, Law Office of Lynn J. Klement, Angleton, TX, for Real Party In Interest.

Panel consists of Justices TAFT, HANKS, and HIGLEY.

## OPINION ON MOTION FOR REHEARING

GEORGE C. HANKS, JR., Justice.

On April 24, 2008, this Court issued an opinion affirming the trial court's judgment. Appellant David Henry filed a motion for rehearing. After due consideration, we deny Henry's motion for rehearing, but withdraw our opinion and substitute the following. Our judgment in this case remains unchanged.

On interlocutory appeal, relator, David Henry alleges that the Brazoria County trial court erred in temporarily enjoining his prosecution of an action in Harris County because (1) the Brazoria County Court has dominant jurisdiction over the Brazoria County Court and (2) neither the application for temporary injunction filed in Brazoria County nor the evidence submitted in support of that application satisfies the requisites for injunctive relief under Texas Rule of Civil Procedure 680. Henry also petitions this Court for a writ of mandamus directing the Brazoria County trial court to set aside its order denying

his motion to abate, by which the court effectively asserts dominant jurisdiction.[1]

We conclude that the Brazoria County trial court has dominant jurisdiction over the claims asserted in Harris County and the Brazoria County Court did not err in issuing the temporary injunction. Henry's petition for writ of mandamus is denied.

## Background

W.T. McMichael and Henry were joint owners of Girard Holdings. In 1997, W.T. and Henry entered into a Stock Purchase Agreement (the "Agreement") for their ownership interests in Girard Holdings. The Agreement provided that, if one died, the other would have the right to purchase his stock in Girard Holdings for a price based on the stock's book value at the time of death. W.T.'s wife, Catherine McMichael, also signed the Agreement.

W.T. died on May 16, 2006. Four months later, Henry attempted to exercise his right to buy W.T.'s 1000 shares of Girard Holdings for approximately $148,000. After Henry sent a demand letter, Catherine McMichael refused to sell the stock to him, alleging that the stock was actually worth between $2 and $4 million at the time of W.T.'s death and that the book value did not reflect the true value of the stock.

On September 1, 2006, Catherine, along with James McMichael and Elizabeth Ann Koehler, Catherine's children and independent co-executors of W.T.'s estate (collectively "the McMichaels"), filed an action for damages against Henry in Brazoria County, where W.T. resided at the time of his death. In this action, the McMichaels, on behalf of the estate, asserted claims against Henry for breach of fiduciary duty, fraud/misrepresentation, unjust enrichment, and for a declaratory judgment that those wrongful acts rendered the Agreement unenforceable. Henry filed a motion to abate in Brazoria County and a motion to transfer venue to Harris County.

Two weeks later, on September 13, 2006, Henry sued the McMichaels in Harris County, seeking specific performance of the Agreement and asserting a breach of contract claim based on the Agreement. The McMichaels filed a motion to transfer venue to Brazoria County, and they later filed a plea in abatement in the Harris County case, arguing that the Brazoria County Court had dominant jurisdiction because the two lawsuits were the same and because they filed their lawsuit first in Brazoria County.

In November 2006, after a non-evidentiary hearing, the Harris County Court denied the McMichaels' plea in abatement. Henry supplemented his motion to abate in the Brazoria County Court, attaching a copy of the Harris County Court's order denying the McMichaels' plea. After a hearing and receiving further evidence from the parties, the Brazoria County Court denied Henry's motions to abate and to transfer venue.

Henry subsequently filed a motion for partial summary judgment in Harris County. The McMichaels then refiled their plea in abatement in Harris County, attaching a copy of the Brazoria County Court's order denying Henry's motions to abate and transfer venue. The Harris County Court again denied the McMichaels' plea in abatement, and the McMichaels

---

1. The respondent is Judge Jerri Lee Mills, County Court–at–Law No. One (1) and Probate Court of Brazoria County, Texas. The underlying suit is *In the Estate of Wallace T. McMichael, Deceased and James McMichael and Elizabeth Ann Koehler, Co–Independent Executors of the Estate of W.T. McMichael, and Catherine McMichael v. David Henry,* Cause No. PR029090–A.

requested a continuance on Henry's motion for partial summary judgment, which the trial court granted.

The next week, the McMichaels filed an application for temporary restraining order ("TRO") in Brazoria County, and, on June 18, 2007, the Brazoria County Court granted an ex parte TRO finding that it had dominant jurisdiction and prohibiting Henry from proceeding with (1) a hearing on his motion for partial summary judgment in the Harris County case and (2) prosecution of the Harris County case. Nine days later, the trial court, after hearing testimony from the McMichaels' attorney, granted a temporary injunction on the same terms as the TRO.

Henry filed this petition for writ of mandamus on June 26, 2007, challenging the Brazoria County Court's order denying his motion to abate.[2] The next day, the Brazoria County Court signed an order for temporary injunction. Henry then filed this interlocutory appeal of the temporary injunction order.

### Interlocutory Appeal—Temporary Injunction

In this interlocutory appeal, Henry asserts that the Brazoria County trial court erred in issuing a temporary injunction enjoining his prosecution of the Harris County action because (1) the Harris County Court has acquired dominant jurisdiction over the Brazoria County Court under the estoppel exception to the general rule of dominant jurisdiction and (2) neither the McMichaels' application for temporary injunction nor the evidence submitted in support of that application satis-

fies the requisites for injunctive relief under Texas Rule of Civil Procedure 680.

### Standard of Review

■ Texas state courts have the power to restrain persons from proceeding with suits filed in other courts of this state by granting an "anti-suit injunction," abating proceedings in a second forum. *Gannon v. Payne*, 706 S.W.2d 304, 305 (Tex.1986). The trial court's decision is reviewed under an abuse of discretion standard. *Id.* A trial court abuses its discretion when it misapplies the law to the established facts of the case. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985).

### Dominant Jurisdiction

In his first issue, Henry argues that, although the Harris County action was not the first to be filed, under the estoppel exception to the general rule of dominant jurisdiction, the Harris County Court acquired dominant jurisdiction by denying the McMichaels' plea of abatement before the Brazoria County Court denied Henry's plea in abatement.

■ The general rule of dominant jurisdiction is that, where a suit would be proper in more than one county, the county in which the suit was first filed acquires dominant jurisdiction to the exclusion of other counties of equal stature. *Curtis v. Gibbs*, 511 S.W.2d 263, 267 (Tex.1974); *Lamar Sav. Ass'n v. White*, 731 S.W.2d 715, 716 (Tex.App.-Houston [1st Dist.] 1987, orig. proceeding). "As long as the forum is a proper one, it is the plaintiff's privilege to choose the forum." *Wyatt v. Shaw Plumbing Co.*, 760 S.W.2d 245, 248 (Tex.

---

**2.** On June 26, 2007, Henry also filed a petition for writ of mandamus challenging the Brazoria County Court's June 18, 2007 TRO and Order Setting Hearing for Preliminary Injunction. Because Henry had an adequate remedy by appeal of the temporary injunc-

tion, mandamus was not appropriate as to the temporary injunction, and we denied mandamus as to the TRO. *See* Tex. Civ. Prac. & Rem.Code Ann. § 51.014(a)(4) (Vernon 2008) (providing for an interlocutory appeal from an order granting a temporary injunction).

1988). Accordingly, we must first determine whether Brazoria County would be a proper venue for the McMichaels' action.

### Venue in Brazoria County

Section 15.002(a)(1) of the Civil Practices and Remedies Code provides that venue for an action is proper in the county in which "all or a substantial part of the events or omissions giving rise to the claim occurred." TEX. CIV. PRAC. REM. CODE § 15.002(a)(1). Venue may be proper in more than one county under the venue rules. *See, e.g., GeoChem Tech Corp. v. Verseckes,* 962 S.W.2d 541, 544 (Tex.1998). In general, plaintiffs are allowed to choose venue first, and the plaintiff's choice of venue cannot be disturbed as long as the suit is initially filed in a county of proper venue. *KW Constr. v. Stephens & Sons Concrete Contractors, Inc.,* 165 S.W.3d 874, 879 (Tex.App.-Texarkana 2005, pet. denied); *Gerdes v. Kennamer,* 155 S.W.3d 541, 549 (Tex.App.-Corpus Christi 2004, no pet.); *Chiriboga v. State Farm Mut. Auto. Ins. Co.,* 96 S.W.3d 673, 678 (Tex.App.-Austin 2003, no pet.).

A trial court must consider all venue facts pled by the plaintiff as true, unless they are specifically denied by an adverse party. *See* TEX.R. CIV. P. 87(3)(a). Once the adverse party specifically denies venue facts, the plaintiff must then respond with prima facie proof of that venue fact. *Id.* "Prima facie proof is made when the venue facts are properly pleaded and an affidavit, and any duly proved attachments to the affidavit, are filed fully and specifically setting forth the facts supporting such pleading." *Id.* This prima facie proof is not subject to rebuttal, cross-examination, impeachment, or disproof. *Ruiz v. Conoco, Inc.,* 868 S.W.2d 752, 757 (Tex.1993); *Chiriboga,* 96 S.W.3d at 678. On appeal, the trial court's determination that venue is proper in a particular county will be upheld if there is any probative evidence supporting venue in the county of suit, even if the evidence preponderates to the contrary. *Chiriboga,* 96 S.W.3d at 678 (citing *Bonham State Bank v. Beadle,* 907 S.W.2d 465, 471 (Tex.1995)).

In this case, the McMichaels allege that venue is proper in Brazoria County and offered probative evidence, in affidavit form, that a substantial part of the omissions serving as the basis for their tort claims occurred in Brazoria County. The crux of the their claims is that, after W.T. became disabled and before his death, Henry failed to develop a fair price under the Agreement for the Girard stock with him. The McMichaels allege that, after W.T. became disabled, Henry met with him on four occasions at a nursing home in Brazoria County regarding the business of Girard but, despite these four meetings, the two men did not discuss the issue and did not set a new price for the Girard stock. The McMichaels allege that Henry's failure to discuss and set a new price during these four meetings resulted in the harm forming the basis of their claims. Accordingly, we find that the McMichaels have presented prima facie proof establishing that venue of their claims is proper in Brazoria County. Since the Brazoria County suit was the first to be filed, Brazoria County has dominant jurisdiction. *See Curtis v. Gibbs,* 511 S.W.2d at 267.

### The Estoppel Exception

Next, we examine whether the estoppel exception deprives the Brazoria County Court of dominant jurisdiction in this case. Estoppel is a long-established exception to the general rule of dominant jurisdiction. *See, e.g., V.D. Anderson Co. v. Young,* 128 Tex. 631, 636–37, 101 S.W.2d 798, 800 (1937). Under this doctrine, a plaintiff who filed the first suit may be estopped from asserting the dominant ju-

risdiction of the first court if it is found that he is guilty of inequitable conduct. *Id.* at 800. If raised, estoppel is a fact issue that must be determined by the trial court where the plea in abatement is filed. *Parr v. Hamilton,* 437 S.W.2d 29, 31 (Tex. Civ.App.-Corpus Christi 1968, no writ).

■ Texas courts have found parties guilty of inequitable conduct and applied the estoppel exception where the plaintiffs in the first-filed action (1) had filed suit merely to obtain priority, without a bona fide intention to prosecute the suit or (2) had prevented their adversaries from filing the subsequent suits more promptly by fraudulently representing that they would settle. *Russell v. Taylor,* 121 Tex. 450, 458–59, 49 S.W.2d 733, 736 (1932); *Johnson v. Avery,* 414 S.W.2d 441, 443 (Tex. 1966). Henry argues that the fact that the Harris County Court ruled on the McMichaels' plea in abatement before the Brazoria County Court ruled on Henry's plea in abatement vests the Harris County Court with dominant jurisdiction and estops the McMichaels from asserting that the Brazoria County Court has dominant jurisdiction. Henry misconstrues the case law—the mere fact that a second court is the first to rule on a plea in abatement does not estop the proponent of the plea from continuing to assert the dominant jurisdiction of the court where the action was first filed, nor does it vest the second court with dominant jurisdiction. *See Curtis,* 511 S.W.2d at 267. To acquire dominant jurisdiction under the estoppel exception, the second court must *also resolve the issue of estoppel against the proponent* of the plea in its ruling. *See id.*

■ Henry argues the trial court's denial of the McMichael's plea in abatement must be read as an implicit finding that the McMichaels' were guilty of inequitable conduct and therefore estopped from asserting the dominant jurisdiction of the Brazoria County Court. We disagree.

The Harris County Court never made a finding as to the estoppel exception. Such a finding is not implicit in the court's denial of the plea because Henry did not raise the estoppel exception in his response to the McMichael's plea in abatement. Henry claims that he adequately raised the issue by alleging in his response to the McMichael's plea of abatement that (1) the McMichaels filed the Brazoria County action after Henry made a formal demand for the McMichaels to comply with the Agreement and (2) the Brazoria County action was filed "in an effort to force Henry to pay more for the stock than is required under the [Agreement]." Even construing Henry's response liberally, the bare recitation of these allegations, without more, does not suffice to raise the estoppel exception to dominant jurisdiction. Nor has Henry provided us with any persuasive authority that he is not required to plead this defense before the trial court may implicitly find that a party is estopped from asserting the rule of dominant jurisdiction. *See* TEX.R. CIV. P. 94. Furthermore, we doubt whether the facts as alleged in this case would support a finding of estoppel. *See, e.g., Russell v. Taylor,* 121 Tex. 450, 458–59, 49 S.W.2d 733, 736 (1932); *Johnson v. Avery,* 414 S.W.2d 441, 443 (Tex.1966). Accordingly, we hold that the estoppel exception does not divest the Brazoria County Court of its dominant jurisdiction in favor of the Harris County Court. We overrule issue one.

### Anti–Suit Injunction

■ In his second issue, Henry argues that the Brazoria County Court erred in granting the anti-suit injunction because the McMichaels did not satisfy the high threshold set by case law for such injunctions between courts, and because the injunction did not meet the requisites of

injunctive relief generally under the Texas Rules of Civil Procedure.

 When a party files suit in a court of competent jurisdiction, that court acquires dominant jurisdiction, entitling it to proceed to judgment and to protect its jurisdiction by enjoining the parties from proceeding in a suit subsequently filed in another court of this state. *Perry v. Del Rio,* 66 S.W.3d 239, 252 (Tex.2001); *Gannon v. Payne,* 706 S.W.2d 304, 305 (Tex. 1986) ("Texas state courts do have the power to restrain persons from proceeding with suits filed in other courts of this state."); *Cleveland v. Ward,* 116 Tex. 1, 285 S.W. 1063 (1926) (explaining that dominant jurisdiction vests a court with exclusive power over a controversy and parties, noting, "Courts are erected to settle controversies, not to multiply them."), *overruled on other grounds by Walker v. Packer,* 827 S.W.2d 833, 842 (Tex.1992). Indeed, such injunctions are authorized under Section 65.011(2) of the Texas Civil Practice and Remedies Code. TEX. CIV. PRAC. REM.CODE ANN. § 65.011(2) ("A writ of injunction may be granted if ... a party performs or is about to perform or is procuring or allowing the performance of an act relating to the subject of pending litigation, in violation of the rights of the applicant, and the act would tend to render the judgment in that litigation ineffectual.").

 With respect to anti-suit injunctions issued against proceedings in other states, the Texas Supreme Court has observed that such injunctions are appropriate to (1) address a threat to the court's jurisdiction; (2) prevent the evasion of important public policy; (3) prevent a multiplicity of suits; or (4) protect a party from vexatious or harassing litigation. *Golden Rule Ins. Co. v. Harper,* 925 S.W.2d 649, 651 (Tex., 1996). In light of the principle of comity and respect between sovereign

states, the party seeking the injunction must also show that "a clear equity demands" the injunction. *Id.* In *Gonzalez v. Reliant Energy, Inc.,* the Texas Supreme Court applied these factors to anti-suit injunctions issued between Texas courts, where venue would have been proper in only one of the courts at issue. 159 S.W.3d 615, 623 (Tex.2005) (specifically noting that the concept of dominant jurisdiction was inapplicable to that case).

By their own language, however, neither *Gonzalez* nor *Golden Rule* directly apply to the case at hand. Instead, this case involves two Texas district courts in separate counties, one of which has properly acquired dominant jurisdiction over the other. This case is therefore governed by the principles set forth in *Perry, Gannon* and *Cleveland.*

In *Perry,* the Supreme Court addressed duplicative lawsuits filed in two separate Texas counties as follows:

> It is not unusual for parties with a choice of forums to prefer one over another, and when more than one party can sue on the same subject matter, they may choose difference courts. As a rule, when cases involving the same subject matter are brought in different courts, the court with the first-filed case has dominant jurisdiction and should proceed, and the other cases should abate. The *obvious reasons for abatement,* as we explained in *Wyatt v. Shaw Plumbing Co.,* are the conservation of judicial resources, avoidance of delay, "comity, convenience, and the necessity for an orderly procedure in the trial of contested issues"—or as we put it in *Cleveland v. Ward,* to "prevent races from court to court by vigilant counsel". The first-filed rule also has several justifications. The jurisprudential reason for the rule is that once a matter is before a court of competent jurisdiction, "its ac-

tion must necessarily be exclusive" because it is "impossible that two courts can, at the same time, possess the power to make a final determination of the same controversy between the same parties." A pragmatic justification for the first-filed rule is efficiency: proceedings earlier begun may be expected to be earlier concluded. A further justification is simple fairness: in a race to the courthouse, the winner's suit should have dominant jurisdiction. 66 S.W.3d at 252 (internal citations omitted). As noted in *Perry*, the problem of duplicative litigation is usually resolved by pleas in abatement in the latter court. *Id.* This, however, is not always the rule. Accordingly, in *Gannon*, the Supreme Court acknowledged that, "when a suit is filed in a court of competent jurisdiction, that court is entitled to proceed to judgment and may protect its jurisdiction by enjoining the parties to a suit subsequently filed in another court of this state." 706 S.W.2d 304. In *Cleveland*, the Supreme Court resolved cross-injunctions issued by courts in Johnson County and Dallas County, and explicitly authorized the Johnson County Court, the court with dominant jurisdiction, to issue "an injunction enjoining the parties to the second action from maintaining it." 285 S.W. at 1071. The Brazoria County Court has issued exactly such an injunction here.

While either Harris County or Brazoria County may have been a proper choice for the McMichaels to file their lawsuit, once they filed suit in Brazoria County, Brazoria County acquired dominant jurisdiction. This dominant jurisdiction vests the Brazoria County Court with the power to protect its jurisdiction over the parties and the issues before it by enjoining Henry from proceeding to hearing on his motion for summary judgment in Harris County, or further prosecution of his lawsuit in Harris County. Further, to the extent that the *Golden Rule* factors need be considered, we note that the Brazoria County Court's injunction was issued to protect its dominant jurisdiction over the parties and issues before it, that it was issued only *after* the Harris County Court denied the McMichaels' plea in abatement and set Henry's motion for summary judgment for hearing, and that requiring parties to pursue duplicative litigation in improper venues wastes judicial resources and is, in itself, inequitable. *Fleming v. Ahumada*, 193 S.W.3d 704, 714–15 (Tex.App.-Corpus Christi 2006, no pet.) (where party was being forced to litigate second suit in improper forum, "clear equity" supported anti-suit injunction). *See also Gonzalez v. Reliant Energy, Inc.*, 159 S.W.3d 615, 623 (Tex.2005) (noting, "It has long been the policy of the courts and the legislature of this state to avoid a multiplicity of lawsuits" and refusing to require Reliant Energy to defend itself in two forums simultaneously).

■ Finally, we address Henry's contention that the Brazoria County Court's temporary injunction did not satisfy the Texas Rules of Civil Procedure. Henry, relying on this Court's holding in *Manufacturers' Hanover Trust Company v. Kingston Investors Corp.*, 819 S.W.2d 607 (Tex.App.-Houston [1st Dist.] 1991, no writ), argues that a party seeking an anti-suit injunction is also required to establish a probable right of recovery in the underlying lawsuit, irreparable harm, and that no adequate remedy at law exists. His reliance on this case for such a requirement is misplaced. First, we note that *Manufacturers Hanover Trust* was decided before the Texas Supreme Court's *Gonzalez* opinion, which did not require a showing of these elements for an anti-suit injunction issued under the trial court's equitable powers. *See Gonzalez*, 159 S.W.3d. at 623 ("Both the need to protect the Harris County Court's jurisdiction and

'clear equity' justified an anti-suit injunction.").

Here, the pleading for injunctive relief set out the bare facts regarding the dispute between the parties, alleging a special relationship between Henry and W.T. McMichael, Henry's failure to disclose material facts to the McMichaels, as well as Henry's unjust enrichment. The petition also set out the facts giving rise to the Brazoria County Court's dominant jurisdiction, and stated that Henry had failed to comply with his discovery obligations. Attached to the petition were documents provided to substantiate Henry's failure to cooperate with his discovery obligations. The petition further alleged that, because the Harris County Court was proceeding to summary judgment before adequate discovery in the case had been conducted, the McMichaels would be irreparably injured and the Brazoria County Court would be deprived of its jurisdiction.

At the injunction hearing, the Brazoria County Court heard testimony from the McMichaels' attorney regarding the Brazoria County Court's dominant jurisdiction, the pendency of the summary judgment hearing in Harris County and the McMichaels' need for additional discovery before any dispositive motions were heard in either court. The docket sheet from the Harris County Court was introduced into evidence, as was a transcript of a hearing held in the Harris County Court between the date of issuance of the temporary restraining order and the hearing on the temporary injunction. In this hearing, Henry's attorney reaffirmed his desire to continue to prosecute the Harris County suit and the summary judgment motion in that court.

Under these facts, we believe that the pleadings and evidence were sufficient to support the Brazoria County Court's entry of the temporary injunction protecting its dominant jurisdiction. Accordingly, we hold that the trial court did not err in granting the McMichaels' temporary injunction, and we overrule issue two.

## Mandamus—Motion to Abate

Finally, Henry filed a petition for writ of mandamus asserting that the Brazoria County Court erred in denying his motion to abate.

Mandamus relief is available only to correct a "clear abuse of discretion" when there is no adequate remedy by appeal. *Walker v. Packer,* 827 S.W.2d 833, 839 (Tex.1992). Mandamus relief may be granted when one court actively interferes with the jurisdiction of another court. *In re Reliant Energy, Inc.,* 159 S.W.3d 624, 626 (Tex.2005) (orig.proceeding). In this case, as shown above, because the Brazoria County trial court had dominant jurisdiction over the Harris County action, the Brazoria County trial court did not abuse its discretion in denying Henry's motion to abate. Accordingly, we deny the petition for writ of mandamus.

## Conclusion

We hold that the trial court did not err in granting the McMichaels' temporary injunction. We further hold that the trial court did not abuse its discretion by denying Henry's motion to abate. Accordingly, we affirm the order of the trial court granting the temporary injunction and deny Henry's petition for mandamus.